ORIGINAL

U.S. DISTRICT COURT FILED SEP 12 2017 S.D. OF N.Y.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/12/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES,

                        Plaintiff,

-against-

FELIX ARISMENDY ASENCIO,

                        Defendant.

**OPINION AND ORDER**

**17 Mag. 6190 (KHP)**

DOC #.___ ___

**Katharine H. Parker, United States Magistrate Judge**

    On September 30, 1999, a Grand Jury in the U.S. District Court for the District of Maryland issued an Indictment charging Felix Arismendy Asencio, a citizen of the Dominican Republic living in the United States, with conspiracy to distribute heroin in violation of 21 U.S.C. § 846, and distribution of heroin and crack cocaine in violation of 21 U.S.C. § 841(a)(1). An arrest warrant for Felix Arismendy Asencio was issued the following day (on October 1, 1999). Additionally, on October 19, 1999, a U.S. Immigration Judge issued a final order of removal for Felix Arismendy Asencio.

    Nearly eighteen years later, on August 11, 2017, U.S. Immigration and Customs Enforcement ("ICE") arrested "Felix Arismendy Asencio de los Santos" (hereinafter, "Defendant") in the Bronx, New York and brought him to its detention facility on Varick Street in Manhattan to hold him pending his removal from the United States. On August 16, 2017, pursuant to an Affidavit of FBI Special Agent Martha Beltran, Defendant was arrested based on the 1999 Arrest Warrant and brought to this Court for presentment the same day with an application that he be removed to the District of Maryland to face prosecution for the crimes charged in the 1999 Indictment.

1

At his presentment, Defendant requested that an identity hearing be held pursuant to Federal Rule of Criminal Procedure 5(c)(3) ("Rule 5"), because he asserted that he was not the same person named in the 1999 Arrest Warrant. The Court construed this as an oral motion to dismiss the affidavit of Agent Beltran and accordingly scheduled a hearing.[1] After the hearing, this Court concluded that the Government had met its burden for removal and ordered that Defendant be removed to Maryland. This Memorandum Order memorializes the Court's decision.

**LEGAL STANDARD**

Rule 5 governs initial appearances upon an arrest. "If the initial appearance occurs in a district other than where the offense was allegedly committed," the Magistrate Judge must, among other things, "transfer the defendant to the district where the offense was allegedly committed if: (i) the government produces the warrant, a certified copy of the warrant, or a reliable electronic form of either; and (ii) the judge finds that the defendant is the same person named in the indictment, information, or warrant." Fed. R. Crim. P 5(c)(3)(D)(i)-(ii). If a defendant contends he is not the same person named in the indictment, the Magistrate Judge must conduct an identity hearing. The sole purpose of this hearing is to determine whether the person arrested is the person wanted in the other district. It is not a merits hearing. *U.S. v. Saldana-Beltran*, 37 F. Supp. 3d 1180, 1183-85 (S.D. Cal. 2014).

---

[1] The hearing was originally scheduled for August 21, 2017, but adjourned to September 6, 2017 at the joint request of the parties so that they could gather evidence and adequately prepare for the hearing. Additionally, Defendant engaged his own counsel to represent him at the hearing instead of continuing with counsel appointed for him at the presentment.

2

Rule 5 does not specify the standard to be applied to determine whether the defendant in an action is the same person named in the out-of-district indictment. However, courts within the Second Circuit have held that a probable cause standard applies to determinations of identity in removal proceedings. *U.S. v. Antoine*, 796 F. Supp. 2d 417, 419-20 (E.D.N.Y. 2011); *U.S. v. Rodriguez-Torres*, No. 14-Mag-1095 (JLC), 2014 WL 2320081, at *2 (S.D.N.Y. May 30, 2014). This Court agrees that the probable cause standard should apply for the reasons set forth in the *Antoine* and *Rodriguez-Torres* decisions. This is the same standard that applies in a preliminary hearing conducted pursuant to Rule 5. The government bears the burden of establishing probable cause. *Id.* at *3-4.

The probable cause standard is "a practical, nontechnical conception." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964) (quoting *Brinegar v. U.S.*, 338 U.S. 160, 176 (1949)). "In the context of an identity hearing, probable cause exists 'if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing' that the defendant is the person named in the out-of-district warrant or indictment." *Rodriguez-Torres*, 2014 WL 2320081, at *3 (quoting *U.S. v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004)).

One issue raised by Defendant during the hearing in this case is whether the Court may consider evidence gathered post-arrest and presented at the identity hearing to assess whether the government has met its burden of showing probable cause for removal. This Court holds that it may. This is consistent with the procedure for scheduling a hearing and introduction of evidence. It is also consistent with the process for preliminary hearings conducted under Rule 5.

3

If the government introduces reliable evidence at the identity hearing to establish that the defendant is the person named in the indictment, the burden of persuasion shifts to the defendant to rebut the presumption of removal. K. SINCLAIR, JR., PRACTICE BEFORE FEDERAL MAGISTRATE JUDGES § 6.06 (2017); Fed. R. Evid. 1101(d)(3) (exempting criminal preliminary hearings from the operations of the Rules of Evidence). No court has addressed the standard the government must meet if the defendant successfully rebuts that there is probable cause for removal. This Court is of the view that if this occurs, the burden shifts back to the government to demonstrate that removal is warranted by clear and convincing evidence. A "clear and convincing" level of proof is an intermediate standard between "probable cause" and "beyond a reasonable doubt." Under a clear and convincing standard, the government must present sufficient evidence to demonstrate that it is reasonably certain or probable that the defendant is the person named in the indictment. *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-cv-585 (AJN), 2017 WL 3605583, at *3 (S.D.N.Y. July 26, 2017) (discussing clear and convincing standard in context of civil contempt case); *Papadopoulos v. Comm'r of Social Security*, No. 13-cv-3163 (RWS), 2014 WL 2038314, at *4 (S.D.N.Y. May 15, 2014) (discussing clear and convincing standard in context of social security case in which petitioner requested sanctions); *Sawyer v. Whitley*, 505 U.S. 333, 336, 349 (1992) (clear and convincing standard must be satisfied to succeed on a habeas petition based on "actual innocence;" standard is showing of reasonable probability); *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 718 F. Supp. 2d 382, 391 (S.D.N.Y. 2010) (in context of patent case describing clear and convincing standard as requiring evidence that factual contention is highly probable) (internal citations omitted). Although not the same as a removal proceeding under Rule 5, this

4

Court notes that a clear and convincing standard is applicable to removal proceedings under the immigration laws. *Marin-Marin v. Sessions*, 852 F.3d 192, 194-95 (2d Cir. 2017) (government must prove by clear, unequivocal, and convincing evidence that alien is subject to deportation). Additionally, in other preliminary proceedings, the government is held to no more than a clear and convincing standard. *See* 18 U.S.C. § 3142(f) (in connection with seeking pre-trial detention under the Bail Reform Act, government must prove dangerousness by clear and convincing evidence). Placing a higher burden on the government would transform an identity hearing into a far more substantive proceeding than contemplated by Rule 5 and potentially impact merits determinations properly before the court that issued the warrant and indictment. *See also* 28 U.S.C. § 636(a)(1) (granting Magistrate Judges authority to decide pre-trial matters only).

Finally, during the hearing in this case, Defendant took issue with the Government's failure to produce all of the underlying criminal file in connection with requesting removal. Defendant asked this Court to draw an adverse interest against the Government to the extent there might be information in the file potentially undermining the Government's proof of identity. This Court declined to do so. Hearings under Rule 5 are conducted pre-discovery and the Rules of Evidence do not apply. Fed. R. Civ. P. 5(c)(3)(D); Fed. R. Evid. 1101(d)(3). Rule 5 determinations are not subject to appeal as of right and do not have *res judicata* effect. *See Saldana-Beltran*, 37 F. Supp. 3d at 1183-85 (discussing history of Rule 5 and Magistrate Judge's authority to make pre-trial rulings). It is inconsistent with the scheme of Rule 5 and the Federal Magistrate's Act to expand the scope of the Rule 5 hearing into one that necessitates full discovery into the merits and/or permits adverse inferences in connection with failure to

produce information. Rule 5 and the Federal Magistrate's Act are designed to prevent delay in criminal cases and get defendants quickly in front of an Article III judge for merits-related decisions. *See id.* at 1185 (discussing 28 U.S.C. § 636 and Rule 5). An identity hearing is non-dispositive and does not end or dispose of a case. *Id.; U.S. v. Green,* 499 F.2d 538, 541 (D.C. Cir. 1974) ("The full panoply of defenses is, of course, available to the arrestee in the transferee court."). Indeed, if a Magistrate Judge orders a defendant released after a removal hearing, the decision is not *res judicata* and while persuasive, the defendant may be again arrested and removal considered. *U.S. v. Levy,* 268 U.S. 390, 393-94(1925); *Saldana-Beltran,* 37 F. Supp. 3d at 1185, n.6.

Thus, the government need only produce sufficient evidence to support transfer of the defendant to another district where the defendant will face charges and be able to assert all defenses after full discovery supervised by the court that issued the warrant and indictment.

## DISCUSSION

The crimes charged in the 1999 Indictment took place in or about November 1998 up to and including December 1998 within the District of Maryland. At the identity hearing, Agent Beltran provided information she learned concerning the facts leading to the 1999 Indictment and the basis for her belief that Defendant was in fact the same Asencio wanted in Maryland for violation of federal narcotics laws. The Government introduced six exhibits through Agent Beltran, including a copy of the 1999 Indictment, a copy of the 1999 Arrest Warrant, a Maryland Driver's Abstract for one Felix Arismendy Asencio, a Florida Driver's Abstract for one Felix Arismendy Asencio, a New York City Identification Card obtained from Defendant on August 16, 2017, and an FBI Report and Photomontage. Additionally, during the hearing, both the

6

Government and Defendant's attorneys referenced certain documents produced by the Government (and provided to this Court and Defendant). These documents included a copy of text messages between Agent Beltran and FBI Agent Kevin McDonald from the District of Maryland dated August 16, 2017 containing photos and other information concerning Defendant (Bates Nos. 3501-09) and various FBI work documents and reports concerning its investigation underlying the 1999 Indictment (USAO_0001-0009). Agent McDonald was one of the agents involved in the investigation of Asencio in Maryland.

The FBI Report contained the following key facts about the investigation underlying the 1999 Indictment. Between November and April 1999, the FBI surveilled two individuals, one of whom it identified as Felix Arismendy Asencio and the other as Elias Novas Deloen, in connection with suspected drug crimes. The surveillance included recorded conversations, discussions with confidential informants and controlled buys. On November 5, 1998, a confidential informant met with two individuals, one of whom was known by the informant as Arismendy, and purchased one ounce of heroin. On December 2, 1998, another confidential informant met with two individuals, one of whom was known by the informant as Asencio, to discuss the purchase of drugs and later purchased 86.4 grams of crack cocaine from them. Importantly, Asencio and his colleague arrived at the December 2 meeting in a blue Buick. On December 10, 1998, Baltimore Police, working in conjunction with the FBI, conducted a traffic stop on the same blue Buick observed on December 2. Asencio was the passenger in the Buick and provided his Maryland driver's license, identifying him as Felix Arismendy Asencio with a date of birth of August 26, 1971 and an address in Baltimore.

On December 18, 1998 and January 8, 1999, the FBI showed Asencio's Maryland driver's license photo to its two confidential informants. One confidential informant confirmed that the picture was of the person he knew as Asencio. The second confidential informant confirmed that the picture was of the person he knew to be someone who purchased cocaine from another drug dealer. About a year later, law enforcement arrested Deloen and Deloen identified Asencio from his Maryland driver's license as the person he knew as Felix Arismendy and for whom he sold drugs.

Sometime later, Asencio was stopped for a traffic violation in Florida. He provided a Florida driver's license with the name Felix Arismendy Asencio and a birthdate of August 26, 1971. A follow-up inquiry by law enforcement revealed that the car in which Asencio was stopped belonged to his then girlfriend, now spouse's, brother.

On August 11, 2017, ICE arrested Defendant. The FBI in Maryland was alerted of this arrest and notified its New York office that Defendant was wanted in Maryland on the 1999 Indictment. After confirming identity of name and birthdate of Defendant and the Asencio wanted in Maryland, Special Agent Beltran arrested Defendant and brought him for presentment in this Court. Agent Beltran testified that upon arresting Defendant, he confirmed that his name was Felix Arismendy Asencio, produced a New York Identification Card with the name Felix A. Asencio de los Santos, and a birthdate of August 26, 1971. Defendant explained that the "A" stood for Arismendy and that de los Santos was his mother's name. Defendant also confirmed that he previously lived in Maryland and Florida.

Based on all of the above-described information, the Government more than satisfied its burden to show probable cause for removal. Critically, there is no dispute that the individual

wanted in Maryland is one Felix Arismendy Asencio who has a birthdate of August 26, 1971 and who was identified by two confidential sources based on his Maryland driver's license. Nor did Defendant dispute that the Maryland license belonged to him.

This identity of names alone creates a presumption of identity. *See, e.g., Smith v. U.S.*, 92 F.2d 460, 461 (9th Cir. 1937) ("An identity of names is sufficient to create an inference of identity which the [defendant] must rebut."); *Wong v. Esola*, 6 F.2d 828, 829 (9th Cir. 1925) ("An inference of identity of person may be drawn from identity of name."). Here, the Government produced far more than an identity of names. There was an identity of birthdates and confirmation that Defendant lived in Maryland at the time of the crimes charged in the 1999 Indictment. Furthermore, from this Court's observation, the individual in the Courtroom bore a remarkable resemblance to the individual on the Maryland driver's license who is wanted in Maryland.

Defendant's counsel did not offer independent evidence to demonstrate that Defendant was not the same Asencio wanted in Maryland. Rather, he argued that the confidential informants who identified his client from the Maryland license were mistaken, that the method by which the informants were shown the license photo was unduly suggestive, and that the Government should have sought stronger evidence of identity from the FBI's investigative file to prove identity. He also argued that the Government's failure to produce what he considered "better" proof of identity, such as fingerprints on the bag in which the drugs were conveyed, should result in an adverse inference against the Government. In other words, his cross examination of Agent Beltran went to the merits of the charges against Defendant.

What Defendant's counsel failed to appreciate, however, is that the scope of an identity hearing is limited to the matters contained in Rule 5(c)(3)(D). Therefore, his substantive challenges to the underlying charges, including false identification, constitutionally deficient identification procedures, and the like, should be addressed to the District Judge in the District of Maryland. *See, e.g., U.S. v. Curi,* No. 3:10–4108 (JSB), 2010 WL 5019088, at *2 (M.D. Tenn. Dec. 2, 2010) (discussing limited scope of identity hearing) (citing cases). This Court's sole responsibility is to determine whether there is probable cause to believe that the person brought for presentment and removal is the same person wanted in Maryland. Here the Government has satisfied its burden of showing probable cause to believe that the Defendant is the person sought in Maryland, and Defendant did not rebut the presumption of identity.

## CONCLUSION

For all of the above reasons, Defendant shall be removed to the District of Maryland for further proceedings.

**SO ORDERED.**

Dated: September 12, 2017
New York, New York

*Katharine H. Parker*

**KATHARINE H. PARKER**
**United States Magistrate Judge**